178 Cal.App.4th 1157 (2009)
WYNONA HARRIS, Plaintiff and Respondent,
v.
CITY OF SANTA MONICA, Defendant and Appellant.
No. B199571.
Court of Appeals of California, Second District, Division Eight.
October 29, 2009.
*1159 Marsha Jones Moutrie, City Attorney, Joseph Lawrence, Assistant City Attorney, Carol Ann Rohr and Barbara Greenstein, Deputy City Attorneys, for Defendant and Appellant.
Kokozian & Nourmand and Michael Nourmand for Plaintiff and Respondent.

OPINION
RUBIN, Acting P. J.
The City of Santa Monica appeals from the judgment in favor of discharged city bus driver Wynona Harris in her pregnancy discrimination lawsuit against the city. Because of instructional error, we reverse and remand for retrial.

FACTS AND PROCEEDINGS
Santa Monica's city-owned bus service, Big Blue Bus, hired Wynona Harris as a bus driver trainee in October 2004. Shortly into her 40-day training period, Harris had what she calls a minor accident, which the city deemed "preventable." No passengers were on her bus and no one was injured, but the accident cracked the glass on the bus's back door. When the city hired Harris, it gave her its "Guidelines for Job Performance Evaluation." The guidelines stated, "Preventable accidents . . . [are] an indication of unsafe driving. . . . [T]hose who drive in an unsafe manner will not pass probation."
In mid-November 2004, Harris successfully completed her training period, and the city promoted her to the position of probationary part-time bus driver. (Her formal title was "Motor Coach Operator Part Time.") As a probationary driver, Harris was an at-will employee. Sometime during her first three-month probation evaluation period (the record is not clear when), Harris had a second preventable accident, in which she sideswiped a parked car and tore *1160 off its side mirror. According to Harris, she hit the parked car after swerving to avoid a car that cut her off in traffic.
On February 18, Harris reported late to work, thus earning her first "miss[-]out." The job performance guidelines that she received when hired defined a "miss[-]out" as a driver failing to give her supervisor at least one hour's warning that she will not be reporting for her assigned shift. The guidelines noted that most drivers get one or two late reports or miss-outs a year, but more than that suggested a driver had a "reliability problem." The guidelines further provided, "Miss-outs and late reports have a specific [demerit] points value [of 25 points]. Probationary employees are allowed half the points as a permanent full time operator, which is 100 points." For her miss-out, Harris received 25 demerit points. Harris's training supervisor testified she told Harris that a probationary employee faced termination if she accumulated 50 points in any rolling 90-day period.
On March 1, 2005, Harris's supervisor gave Harris a written performance evaluation covering her first three months as a probationary driver from mid-November 2004 to February 14, 2005. In grading Harris's "overall performance rating," her supervisor indicated "further development needed." Harris testified at trial that her supervisor told her that, except for her accident the previous November as a trainee, she was doing a good job and that her supervisor would have graded her as "demonstrates quality performance" but for that accident.[1] Underscoring Harris's claim, her supervisor wrote "Keep up the Great Job!" for the category "Goals to Work on During the Next Review Period."
On April 27, 2005, Harris incurred her second miss-out. Her daughter had a hearing that day in juvenile court which required Harris to accompany her. To avoid Harris's losing a day's pay, Harris's supervisor agreed to reschedule her to work the 5:00 p.m. shift. Around 2:30 or 3:00 p.m. that afternoon, Harris called her work dispatcher to report that the juvenile court judge had not yet called her daughter's case. The dispatcher told Harris that Harris could wait until 4:00 p.m.one hour before her shift startedto report that she would be arriving late for her 5:00 p.m. shift without incurring a miss-out. Harris's daughter's case was called shortly after Harris spoke to the dispatcher. The court hearing resulted in the daughter being charged with a felony. Due to the stress from her daughter's plight, Harris testified she forgot *1161 to call her dispatcher by 4:00 p.m. as promised. Following her miss-out, Harris's supervisor prepared a miss-out report that noted Harris had incurred two miss-outs for a total of 50 demerit points.
The day after Harris's miss-out, transit services manager Bob Ayer investigated its circumstances. Ayer met with Harris on May 3 to discuss what had happened. Harris explained she had forgotten to call the dispatcher because she was upset at her daughter being charged with a felony. Based on his investigation, on May 4 or 5, Ayer recommended to his supervisor, the bus company's assistant director, that the miss-out should remain in Harris's file. Ayer testified the assistant director asked him to examine Harris's complete personnel file. Ayer testified he did so and told the assistant director that the file showed Harris was not meeting the city's standards for continued employment because she had two miss-outs, two preventable accidents, and had been evaluated as "further development needed."
About one week after Ayer completed his investigation, Harris had a chance encounter on May 12 with her supervisor, George Reynoso, as she prepared to begin her shift. Seeing Harris's uniform shirt hanging loose, Reynoso told her to tuck in her shirt. Beckoning him to step aside so she could speak to him, Harris told Reynoso she was pregnant. Harris testified Reynoso reacted with seeming displeasure at her news, exclaiming, "Wow. Well, what are you going to do? How far along are you?" He then asked her to get a doctor's note clearing her to continue to work. Four days later, on May 16, Harris gave Reynoso her doctor's note permitting her to work with some limited restrictions. (Neither party argues the restrictions are relevant to this appeal.) The morning Harris gave him the note, Reynoso attended a supervisors' meeting and received a list of probationary drivers who were not meeting standards for continued employment. Harris was on the list. Two days later, Ayer fired Harris. Harris testified that Ayer told her the city had been evaluating all part-time drivers and, although he had heard a lot of good things about her, the next day was going to be her last as a city employee.
In October 2005, Harris sued the city. She alleged the city fired her because she was pregnant. (Gov. Code, §§ 12940, subd. (a) [prohibits discrimination based on "sex"]; 12926, subd. (p) ["sex" discrimination includes pregnancy].) Answering Harris's complaint, the city denied her allegations and asserted as an affirmative defense that it had legitimate, nondiscriminatory reasons to fire her as an at-will employee.
The case was tried to a jury. The city asked the court to instruct the jury with BAJI No. 12.26, which instructed on the city's "mixed-motives" defense. The instruction states: "If you find that the employer's action, which is the subject of plaintiff's claim, was actually motivated by both discriminatory *1162 and non-discriminatory reasons, the employer is not liable if it can establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision. [¶] An employer may not, however, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision. Neither may an employer meet its burden by merely showing that at the time of the decision it was motivated only in part by a legitimate reason. The essential premise of this defense is that a legitimate reason was present, and standing alone, would have induced the employer to make the same decision."[2] The court refused to give the instruction. The court's reason for rejecting the instruction appears to have been that Harris conceded she was an at-will employee (by which the court presumably meant she conceded she could be fired without cause), but the city's purported reason for terminating herpoor performancewas pretextual.[3] By special verdict, the jury found by a vote of nine to three that Harris's "pregnancy [was] a motivating factor/reason for [the city's] decision to discharge" her. The jury awarded her $177,905 in damages.
The city moved on multiple grounds for judgment notwithstanding the verdict and a new trial. In its motions the city argued, among other things, that the court's refusal to instruct the jury with the city's mixed-motive instruction deprived the city of a legitimate defense. The court denied both motions. Harris thereafter moved for her attorney's fees, which the court awarded at slightly more than $400,000. (Gov. Code, § 12965, subd. (b) [prevailing plaintiff in discrimination lawsuit entitled to attorney's fees].) This appeal followed.

DISCUSSION

A. Instructional Error Entitles City to Retrial

(1) We begin with the following observation from our colleagues in Division One of this district: "`In some cases, the evidence will establish that *1163 the employer had "mixed motives" for its employment decision. . . . In a mixed motive case, both legitimate and illegitimate factors contribute to the employment decision.' [Citation.] `Once the [employee] establishes . . . that an illegitimate factor played a motivating or substantial role in an employment decision, the burden falls to the [employer] to prove by a preponderance of the evidence that it would have made the same decision even if it had not taken the illegitimate factor into account.' [Citations.]" (Grant-Burton v. Covenant Care, Inc. (2002) 99 Cal.App.4th 1361, 1379, 122 Cal.Rptr.2d 204 (Grant-Burton).)
(2) Harris was an at-will employee. (Lab. Code, § 2922.) The antidiscrimination provisions of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) under which she sued the city do not "`require the employer to have good cause for its [termination] decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" (Arteaga v. Brink's, Inc. (2008) 163 Cal.App.4th 327, 344 [77 Cal.Rptr.3d 654] (Arteaga), quoting Nix v. WLCY Radio/Rahall Communications (11th Cir. 1984) 738 F.2d 1181, 1187, brackets added.) In other words, the city could fire Harris for any reason, or no reason, so long as it did not do so for an illegal reason.[4]
Harris claims the city fired her because she was pregnant, a reason that, if true, the city concedes is unlawful. (Gov. Code, §§ 12940, subd. (a), 12926, subd. (p).) The city asserts, however, that it had sufficient nondiscriminatory reasons to fire Harris, and her pregnancy played no part in its decision to terminate her. The circumstances to which the city points as giving it adequate cause to fire Harris were undisputed and emerged before the city knew Harris was pregnant: two preventable accidents, two miss-outs, and a performance evaluation warning "further development needed." Because Harris was at will, any one of the five circumstances, either singly or in combination, was a lawful reason for discharge. Moreover, Harris's own testimony about meeting to discuss her second miss-out with transit services manager Ayer on May 3nine days before she told supervisor Reynoso she was pregnantestablishes that her bosses were scrutinizing her job performance before they knew she was expecting a child.
The city asked the court to instruct the jury with BAJI No. 12.26. As offered by the city, that instruction states in part: "If you find that the *1164 employer's action . . . was actually motivated by both discriminatory and non-discriminatory reasons, the employer is not liable if it can establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision." (BAJI No. 12.26; see also Heard, supra, 44 Cal.App.4th at p. 1748.) The instruction was well tailored to the city's defense, which rested on substantial evidence of Harris's deficient performance which, standing alone, lawfully permitted the city to discharge an at-will employee such as Harris. But the evidence of deficient performance did not stand alone, because the city knew Harris was pregnant before it fired her. The city denied Harris's pregnancy played any role in the termination decision, but the city's knowledge of her pregnancy could allow a rational jury to conclude her pregnancy was the reason for her discharge.[5] It so happens, however, that a third possibility also exists, lying between Harris's assertion that the city fired her because she was pregnant and the city's denial of her pregnancy playing any role in its decision: that the city took Harris's pregnancy into account, but also was motivated to discharge her on legitimate grounds.
Instead of BAJI No. 12.26, the court instructed the jury with the Judicial Council's California Civil Jury Instruction (CACI) No. 2500. That instruction stated the city was liable if Harris's pregnancy "was a motivating reason/factor for the discharge." A "motivating factor," the court told the jury, "is something that moves the will and induces action even though other matters may have contributed to the taking of the action." The court's instructions permitted Harris to prevail by showing her pregnancy led to her termination, even if other factors contributed to it. To the extent the court's instructions permitted the jury to find against the city if Harris's pregnancy was a consideration in the city's decisionmaking process, the instructions overlapped BAJI No. 12.26 proffered by the city. But the overlap was incomplete, to the city's detriment, because the instructions as given did not provide the city with a complete defense if the jury found the city would have terminated Harris anyway for performance reasons even if she had not been pregnant. The court's refusal to instruct the jury with BAJI No. 12.26 therefore prejudiced the city.
The city presumably turned to BAJI for its mixed-motive instruction because CACI, implicitly favored by the trial court's local rules (Super. *1165 Ct. L.A. County, Local Rules, rule 8.25), does not contain a mixed-motive instruction similar to BAJI No. 12.26.[6] CACI's omission of a mixed-motive instruction does not appear inadvertent because CACI's drafters knew about decisions applying the principle. An early draft of the CACI instruction defining "Motivating Reason" in employment discrimination cases cited as authority for the instruction the discussion of mixed motive in Desert Palace, Inc. v. Costa (2003) 539 U.S. 90 [156 L.Ed.2d 84, 123 S.Ct. 2148] (Desert Palace) and Grant-Burton. (CACI No. "2507. `Motivating Reason' Explained" [CACI 07-01 (Winter 2007 Revisions, pp. 91-92) at [as of Oct. 29, 2009]] (CACI 07-01).) But after a period for public comment, a revised draft and the final version of the authority for the instruction omitted without explanation the citations to Desert Palace and Grant-Burton. The instruction's wording itself, however, did not change between the drafts and final version except for a minor grammatical change. (Compare CACI 07-01, supra, at pp. 91-92 with CACI 07-03 (Fall 2007 Revisions, p. 71) [as of Oct. 29, 2009] and CACI No. 2507.)
CACI's omission of a form instruction for mixed motive does not undermine the viability of the defense. CACI aims to state the law clearly and concisely. (Cal. Rules of Court, rule 2.1050, subd. (a) ["The goal of [CACI] instructions is to improve the quality of jury decision making by providing standardized instructions that accurately state the law . . . ."]; CACI Preface [goal "was to write instructions that are legally accurate and understandable to the average juror"].) We take from CACI's omission of a mixed-motive instruction a likely recognition by the drafters of CACI that the law involving the mixed-motive defense is not stable and clear, but instead arguably in flux. Indeed, as recently as a few months ago, the United States Supreme Court stated in Gross v. FBL Financial Services, Inc. (2009) 557 U.S. ___ [174 L.Ed.2d 119, 129 S.Ct. 2343] (Gross) that the defense was subject to criticism for its workability while continuing to be available in employment discrimination cases other than those based on age discrimination. (Id. at p. ___ [129 S.Ct. at p. 2349] [mixed motive available under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) involving among other things, race or gender, but not under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.)].) In doing so, the Gross court restated its holding in Desert Palace that Congress had expressly permitted mixed-motive employment discrimination claims under title VII. (See Gross, at p. ___ [129 S.Ct. at p. 2349], citing Desert Palace, supra, 539 U.S. at pp. 94-95; see also Reeves v. Safeway Stores, Inc. (2004) 121 Cal.App.4th 95, *1166 111, fn. 11 [16 Cal.Rptr.3d 717] [review of summary judgment favorably discussing "mixed motive" as an analytical model competing with shifting burdens of proof established by McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817]].)
(3) Although the Supreme Court was interpreting federal antidiscrimination statutes in Gross (29 U.S.C. § 621 et seq.) and in Desert Palace (42 U.S.C. § 2000e-2(m)), California customarily looks to federal law when interpreting analogous state statutes; indeed, CACI No. 2507, defining "Motivating Reason," cites the federal statute in Desert Palace as one of the instruction's sources and authority. (Desert Palace, supra, 539 U.S. at pp. 94-95; see also 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 849, p. 287 [citing Desert Palace in support of mixed-motive instruction]; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2008) ¶ 7:485 et seq., p. 7-84.7 (rev. # 1, 2008) [discussing mixed-motive employment discrimination].) The mixed-motive defense thus remains good law available to employers in the right circumstances. (Gross, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2349]; Desert Palace, supra, 539 U.S. at pp. 94-95; Arteaga, supra, 163 Cal.App.4th at p. 357 [dicta noting court need not address mixed-motive defense in the case before it]; Grant-Burton, supra, 99 Cal.App.4th at p. 1379.)[7]
Harris suggests the mixed-motive rule stated in BAJI No. 12.26 is no longer good law. In support she cites only our Supreme Court's grant of review in Harvey v. Sybase, Inc. (2008) 161 Cal.App.4th 1547 [76 Cal.Rptr.3d 54], review granted July 23, 2008, S163888), a review that was later dismissed by stipulation of the parties on September 10, 2008. A decision in *1167 which the Supreme Court grants review may not be cited as authority, and the Supreme Court's decision to grant review is itself of no precedential value.
(4) Harris also contends the court did not err in refusing to instruct the jury with BAJI No. 12.26 because the city's answer to Harris's complaint did not plead mixed motive as an affirmative defense. According to Harris, the defense was only an afterthought developed by the city in the midst of trial, evidenced by the city's failure to include the instruction in its initial set of jury instructions. Harris cites no authority, however, that the mixed-motive instruction constitutes an affirmative defense that a defendant waives if not alleged in its answer to the complaint. A defendant's answer must allege affirmative defenses that involve a "new matter" or risk waiving the defense. (Code Civ. Proc., § 431.30, subd. (b)(2) ["The answer to a complaint shall contain: [¶] . . . [¶] (2) A statement of any new matter constituting a defense."].) A "new matter" is something not put at issue by the plaintiff's claims. (Carranza v. Noroian (1966) 240 Cal.App.2d 481, 488 [49 Cal.Rptr. 629].) The city's motive for firing Harris was not a new matter; to the contrary, its motive was the central disputed issue in the lawsuit. And in any case, the city's answer asserted the city had legitimate reasons for discharging Harris, an assertion that by implication raises poor job performance as a reason for her discharge.

B. Judgment Notwithstanding the Verdict Properly Denied

(5) Although we hold that the court erred in not instructing the jury with the mixed-motive defense of BAJI No. 12.26, we hold the error does not entitle the city to judgment notwithstanding the verdict because there was substantial evidence to support the jury's verdict for Harris. The city contends it is entitled as a matter of law to a verdict in its favor because its reasons for firing Harris, who was an at-will employee, were sufficiently unassailable that no rational jury could conclude the city fired her because she was pregnant. (Cf. Caldwell v. Paramount Unified School Dist. (1995) 41 Cal.App.4th 189, 201 [48 Cal.Rptr.2d 448] ["whether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury"].) In support, the city cites trial testimony that in the years preceding Harris's discharge, not one of 15 probationary drivers with performance records similar to hers was retained by the city. The city's reliance on this and other evidence suggesting the city did not fire Harris because she was pregnant is misplaced, however, because the jury was entitled to disbelieve the city's evidence that Harris's pregnancy played no role in her discharge. (Cf. Addy v. Bliss & Glennon (1996) 44 Cal.App.4th 205, 216 [51 Cal.Rptr.2d 642] [employee could not make prima facie case of discrimination because job required, among other things, four-year college degree, *1168 which employee lacked].) Moreover, Harris offered sufficient evidence to permit a jury to conclude the city acted with discriminatory animus against her. For example, in the only written periodic evaluation she received at the end of her first three months as a probationary driver, Harris's supervisor wrote positive things about her, including "Keep up the Great Job!" as well as, Harris testified, telling her she would have received a positive grade but for her accident early in her training period. (See Colarossi v. Coty US Inc. (2002) 97 Cal.App.4th 1142, 1154 [119 Cal.Rptr.2d 131] [termination of highly rated employee can be circumstantial evidence of discriminatory intent].) Only after the city learned she was pregnant, Harris argues, did the city cite her accidents as evidence of poor performance, even though the city promoted her from trainee to probationary bus driver after her first accident, proving that accidents did not preclude continued employment. Moreover, Harris notes, one of her supervisors testified she believed a probationary employee was subject to termination only after four accidents.
Harris also presented evidence that the city did not welcome news of her pregnancy. For example, supervisor Reynoso exclaimed with seeming displeasure at hearing of her pregnancy, "Wow. Well, what are you going to do? How far along are you?" And rather than congratulate her, he asked her for a doctor's note, even though there was no evidence the city had a formal written policy of requesting a doctor's clearance for a pregnant employee to continue working.[8]
Finally, Harris offered evidence arguably casting doubt on whether her accumulation of 50 demerit points in 90 days was the reason the city fired her. First, Ayer did not tell her he was firing her because she had accumulated too many demerit points. The rule of "50 in 90" was not written down in any employee manual or handbook, and Harris contends the city had no such policy. In support, she notes the guidelines for employee performance that she received the day she was hired do not state 50 points in 90 days means termination. Also, the "Criteria for Probationary Termination" developed by Ayer for separating probationary drivers does not mention the 50-points-in-90-days rule. And finally, Harris testified she interpreted the guidelines as stating that upon her promotion to probationary driver she was permitted the same number of 100 points per year for miss-outs and late reports as permanent drivers before she was subject to discharge.
(6) In sum, the parties disputed the reason the city fired Harris. Harris offered sufficient evidence that, if believed by a trier of fact, suggested the city fired her because she was pregnant. On the other hand, the city's competing evidence focusing on Harris's purportedly poor performance, even *1169 if believed, did not obligate the city to fire her even though she was an at-will employee; the city could have stayed its hand and kept her on as a driver. Accordingly, the city was not entitled to judgment notwithstanding the verdict.

C. Award of Attorney's Fees Is Premature

The trial court awarded Harris over $400,000 in attorney's fees because she was a prevailing plaintiff. In light of our reversal of the judgment for Harris, an award of attorney's fees is premature. Accordingly, we direct the trial court to vacate the award.

DISPOSITION
The judgment and attorney's fee award are reversed, and the matter is remanded for retrial. Each side to bear its own costs on appeal.
Flier, J., and Bigelow, J., concurred.
NOTES
[1] Under "Work Habits/Reliability," Harris's supervisor noted more fully: "Follows policies and procedures, Wynona Harris operates vehicle with minimum supervision. During this evaluation period, Wynona Harris had no absences, no complaints, no compliments, two accidents (preventable), no miss[-]out, no late reports, no running hot." The supervisor presumably did not note Harris's February 18 miss-out because it happened after February 14, the end of the evaluation period covered by the form.
[2] The mixed-motive defense appears to have been first applied to employment discrimination in Price Waterhouse v. Hopkins (1989) 490 U.S. 228, 244-245 [104 L.Ed.2d 268, 109 S.Ct. 1775] (Price Waterhouse), a United States Supreme Court decision. After Price Waterhouse, California courts followed suit by recognizing a mixed-motive defense was available under state law employment discrimination cases. (See, e.g., Heard v. Lockheed Missiles & Space Co. (1996) 44 Cal.App.4th 1735, 1747-1748 [52 Cal.Rptr.2d 620] (Heard).)
[3] More fully, the court stated: "This at-will business is not an issue. Plaintiff isn't saying that she wasn't an at-will employee. She's just saying that all of the things that she's bringing up to show that, to try to show that the city didn't use their own regulations or that the city had mixed regulations [sic: motivations], or that the city had different regulations [sic: motivations], or didn't know what they were doing, all those allegations are circumstantial evidence that she was fired for discriminatory reasons, and all this is pretext; correct? [¶] Isn't that what you're saying?"
[4] An employee "`"cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."'" (Arteaga, supra, 163 Cal.App.4th at p. 343, quoting Hersant v. Department of Social Services (1997) 57 Cal.App.4th 997, 1005 [67 Cal.Rptr.2d 483].)
[5] See, e.g., Ray v. Henderson (9th Cir. 2000) 217 F.3d 1234, 1244 [discriminatory intent may be inferred from adverse action coming "close on the heels" of protected activity]; Gleklen v. Democratic Congressional Campaign (2000) 339 U.S. App.D.C. 354 [199 F.3d 1365, 1368] [same]; but see Arteaga, supra, 163 Cal.App.4th at p. 353 ["temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination. [Citations.] This is especially so where the employer raised questions about the employee's performance before he disclosed his symptoms, and the subsequent termination was based on those performance issues"].)
[6] See "Table 1 of Related Instructions: BAJI to . . . (CACI)," page TRI-6, (as of Oct. 29, 2009).
[7] In 1991, Congress amended federal antidiscrimination law in response to the Supreme Court's holding in Price Waterhouse. (See Washington v. Garrett (9th Cir. 1993) 10 F.3d 1421, 1432, fn. 15.) The amendment's effect was two-fold: it codified the mixed-motive defense into federal statutory law, but it limited the remedies available to a plaintiff when an employer established the defense. The 1991 amendment to title VII at 42 United States Code section 2000e-5(g)(2)(B) stated: "On a claim in which an individual proves [bias in employment practices] . . . and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court[¶] (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of [that] claim . . . and [¶] (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment [as described elsewhere in the statute]." Although California courts look to federal antidiscrimination law as an aid in interpreting analogous state law provisions (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; Kelly v. Stamps.com Inc. (2005) 135 Cal.App.4th 1088, 1099 [38 Cal.Rptr.3d 240]), we may not add language to state statutes that the Legislature has not enacted. Accordingly, the federal limit to remedies in a mixed-motive case does not apply in this case because no similar language exists in FEHA, our state antidiscrimination statute. The Legislature, of course, is free to enact legislation on the mixed-motives defense that is either consistent or inconsistent with federal law.
[8] Although the jury could very well have found the comment innocuous and only an inquiry into whether Harris intended to continue working, it was not compelled to do so.